DANIEL L. WARSHAW (Bar No. 185365)
    dwarshaw@pwfirm.com
**PEARSON WARSHAW, LLP**
15165 Ventura Boulevard, Suite 400
Sherman Oaks, California 91403
Telephone: (818) 788-8300
Facsimile:  (818) 788-8104

JILL M. MANNING (Bar No. 178849)
    jmanning@pwfirm.com
NEIL J. SWARTZBERG (Bar No. 215133)
    nswartzberg@pwfirm.com
**PEARSON WARSHAW, LLP**
555 Montgomery Street, Suite 1205
San Francisco, California 94111
Telephone: (415) 433-9000
Facsimile:  (415) 433-9008

JEFFREY A. KONCIUS (Bar No. 189803)
    koncius@kiesel.law
NICOLE RAMIREZ JONES (Bar No. 279017)
    ramirezjones@kiesel.law
**KIESEL LAW LLP**
86648 Wilshire Boulevard
Beverly Hills, CA 90211
Telephone: (310) 228-6929
Facsimile:  (310) 854-0812

*Attorneys for Plaintiff and the Proposed Class*

*Additional Counsel Listed on Signature Page*

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA, SAN FRANCISCO DIVISION

| | |
|---|---|
| **LINDA JOHNSON**, individually and on behalf of all others similarly situated,<br><br>       Plaintiff,<br><br>    v.<br><br>**POSTMEDS, INC. d/b/a TRUEPILL**,<br><br>       Defendant. | CASE NO.<br><br>**CLASS ACTION COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

*Vertical left margin:* PEARSON WARSHAW, LLP
15165 VENTURA BOULEVARD, SUITE 400
SHERMAN OAKS, CALIFORNIA 91403

1002313.4

PEARSON WARSHAW, LLP
15165 VENTURA BOULEVARD, SUITE 400
SHERMAN OAKS, CALIFORNIA 91403

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Plaintiff Linda Johnson brings this Class Action Complaint, individually and on behalf of all others similarly situated (the "Class Members") against Postmeds, Inc. d/b/a Truepill ("Postmeds" or "Defendant") alleging as follows, based upon information and belief, investigation of counsel, and personal knowledge of Plaintiff.

## NATURE OF CASE

1.      This class action arises out of the recent, targeted cyberattack and data breach where unauthorized third-party criminals retrieved and exfiltrated personal data from PostMeds' network that resulted in unauthorized access to the highly sensitive consumer data of Plaintiff, and, according to Postmeds, over 2.3 million Class Members ("Data Breach").[1] After learning of the Data Breach, Postmeds waited nearly two months to notify affected individuals.

2.      Postmeds is a "digital pharmacy partner" providing healthcare partners with a "modern way to deliver prescriptions," based in California.[2]

3.      Information compromised in the Data Breach includes personally identifying information ("PII") and protected health information ("PHI") such as patient names, medication type, and in some instances, demographic information and/or prescribing physician name (collectively, "PII" and "PHI" is "Private Information").

4.      Plaintiff brings this class action lawsuit individually and on behalf of those similarly situated to address Defendant's inadequate safeguarding of Plaintiff's and Class Members' Private Information that Defendant collected and maintained.

5.      Defendant maintained the Private Information in a negligent and/or reckless manner. In particular, the Private Information was maintained on Defendant's computer system and network in a condition vulnerable to cyberattacks. The mechanism of the cyberattack and potential for improper disclosure of Plaintiff's and Class Members' Private Information was a known risk to

---

[1] Postmeds Website Data Breach Notice, https://assets.website-files.com/650b733c29599811871814e3/65403dd34d99148b02ca8ece_4853-3845-4924-v1.pdf (last accessed Nov. 17, 2023); Postmeds Notice on U.S. Department of Health and Human Services' data breach reporting portal, https://ocrportal.hhs.gov/ocr/breach/breach_report.jsf (last accessed Nov. 20, 2023).

[2] https://www.truepill.com/ (last accessed Nov. 17, 2023).

Defendant, and thus Defendant was on notice that failing to take steps necessary to secure Private Information from those risks left that Private Information in a vulnerable condition. In addition, Postmeds and its employees failed to properly monitor the computer network and IT systems that housed the Private Information.

6.      Armed with the Private Information accessed in the Data Breach, data thieves can commit a variety of crimes including opening new financial accounts and taking out loans in Class Members' names, using Class Members' names to obtain medical services, using Class Members' Private Information to target other phishing and hacking intrusions based on their individual health needs, using Class Members' information to obtain government benefits, filing fraudulent tax returns using Class Members' information, obtaining driver's licenses in Class Members' names, and giving false information to police during an arrest.

7.      As a result of the Data Breach, Plaintiff and Class Members face a substantial risk of imminent and certainly impending harm. Plaintiff and Class Members have suffered, and will continue to suffer injuries associated with this risk, including but not limited to a loss of time, mitigation expenses, and anxiety over the misuse of their Private Information.

8.      Even those Class Members who have yet to experience identity theft have to spend time responding to the Data Breach and are at an immediate and heightened risk of all manners of identity theft as a direct and proximate result of the Data Breach. Plaintiff and Class Members have incurred, and will continue to incur, damages in the form of, among other things, identity theft, attempted identity theft, lost time and expenses mitigating harms, increased risk of harm, damaged credit, diminished value of Private Information, loss of privacy, and/or additional damages as described below.

9.      Indeed, Defendant, itself, encourages Class Members to spend time dealing with the Data Breach. In announcing the Data Breach, Defendant has encouraged Class Members to "regularly review" their information for accuracy, including information they receive from their healthcare providers. Thus, Defendant recognized the actual, imminent harm and injury that flowed from the Data Breach.

10.     Accordingly, Plaintiff brings this action against Defendant seeking redress for their

PEARSON WARSHAW, LLP
15165 VENTURA BOULEVARD, SUITE 400
SHERMAN OAKS, CALIFORNIA 91403

1  unlawful conduct, and asserting claims for: (i) negligence; (ii) negligence per se; (iii) gross

2  negligence; (iv) breach of implied contract; (v) unjust enrichment; (vi) bailment; and (vii) breach of

3  fiduciary duty. Through these claims, Plaintiff seeks damages in an amount to be proven at trial, as

4  well as injunctive and other equitable relief, including improvements to Defendant's data security

5  systems, future annual audits, and adequate credit monitoring services funded by Defendant.

6  **THE PARTIES**

7  11.    Plaintiff Linda Johnson is a natural person, resident, and citizen of the State of

8  Mississippi.

9  12.    Defendant obtained and continues to maintain the Private Information of Plaintiff

10  and owed her a legal duty and obligation to protect her Private Information from unauthorized access

11  and disclosure. Plaintiff's Private Information was compromised and disclosed as a result of

12  Defendant's inadequate data security, which resulted in the Data Breach.

13  13.    Plaintiff received a notice letter from Defendant Postmeds, dated October 30, 2023,

14  stating that a "bad actor" accessed and obtained certain files on the Postmeds network containing

15  her Private Information between August 30, 2023 – September 1, 2023.

16  ***Defendant Postmeds, Inc. d/b/a Truepill***

17  14.    Defendant Postmeds, Inc. d/b/a Truepill is a corporation incorporated in Delaware,

18  with its principal place of business located at 3121 Diablo Avenue, Hayward, CA 94545. Defendant

19  is a citizen of the States of Delaware and California.

20  **JURISDICTION AND VENUE**

21  15.    This Court has original jurisdiction over this action under the Class Action Fairness

22  Act, 28 U.S.C. § 1332(d)(2) because Plaintiff and at least one member of the putative Class, as

23  defined below, are citizens of a different state than Defendant Postmeds; there are more than 100

24  putative class members; and, the amount in controversy exceeds $5 million exclusive of interest and

25  costs.

26  16.    This Court has general personal jurisdiction over Defendant because Defendant

27  maintains its principal places of business in Hayward, California, regularly conducts business in

28  California, and has sufficient minimum contacts in California.

PEARSON WARSHAW, LLP
15165 VENTURA BOULEVARD, SUITE 400
SHERMAN OAKS, CALIFORNIA 91403

17.   Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) because Defendant's principal place of business is in this District, and a substantial part of the events, acts, and omissions giving rise to Plaintiff's claims occurred in this District.

## DEFENDANT'S BUSINESS

18.   Postmeds, which does business as "Truepill," provides online pharmacy deliver services, offering an online platform that enables users to check copay pricing, request refills, and get status notifications on all orders.[3] Postmeds claims to "[d]eliver accessible and convenient care to every patient."[4]

19.   To obtain pharmacy services from Postmeds, patients, like Plaintiff and Class Members, must provide their doctors, medical professionals, or Defendant directly with highly sensitive Private Information. As part of their business, Defendant then compiles, stores, and maintains the Private Information it receives from patients and healthcare professionals who utilize Defendant's services. Defendant has served over 3 million individuals and delivered over 20 million prescriptions,[5] indicating that it has created and maintains a massive repository of Private Information: a particularly lucrative target for data thieves looking to obtain, misuse, or sell patient data.

20.   In the ordinary course of its business of providing pharmacy services, Postmeds maintains the Private Information of consumers, including but not limited to:

- Name, address, phone number and email address;
- Date of birth;
- Demographic information;
- Financial and/or payment information;
- Information relating to individual medical history;
- Information concerning an individual's doctor, nurse, or other medical

---

[3] https://www.truepill.com/ (last accessed Nov. 17, 2023).

[4] *Id.*

[5] *Id.*

PEARSON WARSHAW, LLP
15165 VENTURA BOULEVARD, SUITE 400
SHERMAN OAKS, CALIFORNIA 91403

providers;

- Health insurance information;

- Prescription medication information; and

- Other information that Defendant may deem necessary to provide services and care.

21.    Additionally, Defendant may receive Private Information from other individuals and/or organizations that are part of a patient's "circle of care," such as referring physicians, patients' other doctors, patients' health plan(s), close friends, and/or family members.

22.    Because of the highly sensitive and personal nature of the information Defendant acquires and stores with respect to patients and other individuals, Postmeds promises to, among other things: keep PHI private; comply with health care industry standards related to data security and Private Information, including HIPAA; inform consumers of their legal duties and comply with all federal and state laws protecting consumer Private Information; only use and release Private Information for reasons that relate to medical care and treatment; and provide adequate notice to individuals if their Private Information is disclosed without authorization.

23.    As a HIPAA covered business entity (*see infra*), Postmeds is required to implement adequate safeguards to prevent unauthorized use or disclosure of Private Information, including by implementing requirements of the HIPAA Security Rule and to report any unauthorized use or disclosure of Private Information, including incidents that constitute breaches of unsecured PHI as in the case of the Data Breach complained of herein.

24.    However, Postmeds did not maintain adequate security to protect its systems from infiltration by cybercriminals, and it waited nearly two months to publicly disclose the Data Breach.

25.    By obtaining, collecting, using, and deriving a benefit from Plaintiff's and Class Members' Private Information, Defendant assumed legal and equitable duties and knew or should have known that it was responsible for protecting Plaintiff's and Class Members' Private Information from unauthorized disclosure.

**Postmeds is a Covered Entity Subject to HIPAA**

26.    Postmeds is a HIPAA covered entity that provides services to patients and healthcare

PEARSON WARSHAW, LLP
15165 VENTURA BOULEVARD, SUITE 400
SHERMAN OAKS, CALIFORNIA 91403

1  and medical service providers. As a regular and necessary part of its business, Postmeds collects the

2  highly sensitive Private Information of its and its clients' patients. As a covered entity, Postmeds is

3  required under federal and state law to maintain the strictest confidentiality of the patient's Private

4  Information that it acquires, receives, and collects, and Postmeds is further required to maintain

5  sufficient safeguards to protect that Private Information from being accessed by unauthorized third

6  parties.

7  27.    As a covered entity under HIPAA, Postmeds is required to ensure that it will

8  implement adequate safeguards to prevent unauthorized use or disclosure of Private Information,

9  including by implementing requirements of the HIPAA Security Rule and to report any unauthorized

10  use or disclosure of Private Information, including incidents that constitute breaches of unsecured

11  PHI as in the case of the Data Breach complained of herein.

12  28.    Due to the nature of Postmeds business, which includes providing a range of

13  pharmacy services, including storing and maintaining electronic health records, Postmeds would be

14  unable to engage in its regular business activities without collecting and aggregating Private

15  Information that it knows and understands to be sensitive and confidential.

16  29.    By obtaining, collecting, using, and deriving a benefit from Plaintiff's and Class

17  Members' Private Information, Postmeds assumed legal and equitable duties and knew or should

18  have known that they were responsible for protecting Plaintiff's and Class Members' Private

19  Information from unauthorized disclosure.

20  30.    Plaintiff and Class Members are or were patients, or are the executors or surviving

21  spouses of patients, whose medical records and Private Information were maintained by, or who

22  received health-related or other services from Postmeds and directly or indirectly entrusted

23  Postmeds with their Private Information.

24  31.    Plaintiff and Class Members relied on Postmeds to implement and follow adequate

25  data security policies and protocols, to keep their Private Information confidential and securely

26  maintained, to use such Private Information solely for business and health care purposes, and to

27  prevent the unauthorized disclosures of the Private Information. Plaintiff and Class Members

28  reasonably expected that Postmeds would safeguard their highly sensitive information and keep that

PEARSON WARSHAW, LLP
15165 VENTURA BOULEVARD, SUITE 400
SHERMAN OAKS, CALIFORNIA 91403

1  Private Information confidential.

2  32.    As described throughout this Complaint, Postmeds did not reasonably protect,

3  secure, or store Plaintiff's and Class Members' Private Information prior to, during, or after the Data

4  Breach, but rather, enacted unreasonable data security measures that it knew or should have known

5  were insufficient to reasonably protect the highly sensitive information Postmeds maintained.

6  Consequently, cybercriminals circumvented Postmeds's security measures, resulting in a significant

7  data breach.

8  **THE DATA BREACH AND NOTICE LETTER**

9  33.    According to the Notice Letter Postmeds provided to Plaintiff and Class Members,

10  Postmeds was subject to a ransomware attack where unauthorized parties accessed Private

11  Information on Postmeds's networks on August 30, 2023 – September 1, 2023.

12  34.    On August 31, 2023, Postmeds discovered a "bad actor" had gained access to its

13  network and to files used by Postmeds for its pharmacy management and fulfillment services. In

14  response, according to the Notice Letter, Postmeds "launched an investigation with assistance from

15  cybersecurity professionals" and "worked quickly to secure our environment."[6]

16  35.    Through Postmeds's investigation, Postmeds determined that "the bad actor accessed

17  the files between August 30, 2023 to September 1, 2023" and that the files contained certain Private

18  Information, including patients' names and prescription information, and in certain cases also

19  included medication type, demographic information, and/or prescribing physician.[7] According to

20  Postmeds disclosure on the U.S. Department of Health and Human Services' data breach reporting

21  portal, Postmeds admitted that the Data Breach compromised the information of over 2.3 million

22  patients.

23  36.    Postmeds waited nearly two months from the date it learned of the Data Breach and

24  the highly sensitive nature of the Private Information impacted to publicly disclose the Data Breach

25

26  ─────────────────
[6] A redacted version of the Notice of Data Breach ("Notice Letter") is attached hereto as Exhibit

27  "A".

28  [7] *See id.*

and notify affected individuals. For example, Plaintiff's Notice Letter is dated October 30, 2023.[8]

37.     In the aftermath of the Data Breach, Postmeds reportedly intends to "enhance[e] our security protocols and technical safeguards" and claims to be "increasing awareness of cybersecurity threats through additional employee training."[9] In other words, Defendant admits additional security was required, but there is no indication whether these steps are adequate to protect Plaintiff's and Class Members' Private Information going forward.

38.     In the Notice Letter Defendant recommended that Plaintiff and Class Members "review your information for accuracy, as a best practice, including information you receive from your healthcare providers," but offers no credit monitoring or identity theft services to the majority of the over 2.3 million affected individuals.[10]

39.     According to Postmeds, Plaintiff's and Class Members' Private Information was exfiltrated and stolen in the attack.

40.     Postmeds's accessed systems contained Private Information that was accessible, unencrypted, unprotected, and vulnerable for acquisition and/or exfiltration by the unauthorized actor.

41.     As a HIPAA covered business entity that collects, creates, and maintains significant volumes of Private Information, the targeted attack was a foreseeable risk which Postmeds was aware of and which the Postmeds knew it had a duty to guard against. It is well-known that healthcare businesses such as Defendant's, which collect and store the confidential and sensitive PII/PHI of millions of individuals, are frequently targeted by cyberattacks. Further, cyberattacks are highly preventable through the implementation of reasonable and adequate cybersecurity safeguards, including proper employee cybersecurity training.

42.     The targeted cyberattack was expressly designed to gain access to and exfiltrate private and confidential data, including (among other things) the Private Information of patients,

---

[8] *See id.*

[9] *See* Notice Letter.

[10] *See* Postmeds Notice on U.S. Department of Health and Human Services' data breach reporting portal, https://ocrportal.hhs.gov/ocr/breach/breach_report.jsf (last accessed Nov. 20, 2023).

PEARSON WARSHAW, LLP
15165 VENTURA BOULEVARD, SUITE 400
SHERMAN OAKS, CALIFORNIA 91403

PEARSON WARSHAW, LLP
15165 VENTURA BOULEVARD, SUITE 400
SHERMAN OAKS, CALIFORNIA 91403

1  like Plaintiff and Class Members.

2       43.    Defendant had obligations created by HIPAA, contract, industry standards, common

3  law, and its own promises and representations made to Plaintiff and Class Members to keep their

4  Private Information confidential and to protect it from unauthorized access and disclosure.

5       44.    Plaintiff and Class Members provided their Private Information to Postmeds, either

6  directly or indirectly, with the reasonable expectation and mutual understanding that Defendant

7  would comply with its obligations to keep such information confidential and secure from

8  unauthorized access.

9       45.    By obtaining, collecting, using, and deriving a benefit from Plaintiff's and Class

10  Members' Private Information, Postmeds assumed legal and equitable duties and knew, or should

11  have known, that it was responsible for protecting Plaintiff's and Class Members' Private

12  Information from unauthorized disclosure.

13       46.    Due to Postmeds's inadequate security measures and Postmeds's delayed notice to

14  victims, Plaintiff and Class Members now face a present, immediate, and ongoing risk of fraud and

15  identity theft that they will have to deal with for the rest of their lives.

16  **The Data Breach was a Foreseeable Risk of Which Defendant was on Notice**

17       47.    As a covered entity handling medical patient data, Postmeds's data security

18  obligations were particularly important given the substantial increase in cyberattacks and/or data

19  breaches in the healthcare industry and other industries holding significant amounts of Private

20  Information preceding the date of the Data Breach.

21       48.    At all relevant times, Postmeds knew, or should have known that Plaintiff's and Class

22  Members' Private Information was a target for malicious actors. Despite such knowledge, Postmeds

23  failed to implement and maintain reasonable and appropriate data privacy and security measures to

24  protect Plaintiff's and Class Members' Private Information from cyberattacks that Postmeds should

25  have anticipated and guarded against.

26       49.    In light of high-profile data breaches at other health care providers, Defendant knew

27  or should have known that its electronic records and consumers' Private Information would be

28  targeted by cybercriminals and ransomware attack groups.

PEARSON WARSHAW, LLP
15165 VENTURA BOULEVARD, SUITE 400
SHERMAN OAKS, CALIFORNIA 91403

50.     These data breaches have been a consistent problem for the past several years, providing Defendant sufficient time and notice to harden its systems and engage in better, more comprehensive cybersecurity practices.

51.     Cyber criminals seek out PHI at a greater rate than other sources of personal information. In a 2022 report, the healthcare compliance company, Protenus, found that there were 905 medical data breaches in 2021, leaving over 50 million patient records exposed for 700 of the 2021 incidents. This is an increase from the 758 medical data breaches that Protenus compiled in 2020.[11]

52.     The healthcare sector suffered about 337 breaches in the first half of 2022 alone, according to Fortified Health Security's mid-year report released in July. The percentage of healthcare breaches attributed to malicious activity rose more than five percentage points in the first six months of 2022 to account for nearly 80 percent of all reported incidents.[12]

53.     In light of recent high profile cybersecurity incidents at other healthcare partner and provider companies, including American Medical Collection Agency (25 million patients, March 2019), University of Washington Medicine (974,000 patients, December 2018), Florida Orthopedic Institute (640,000 patients, July 2020), Wolverine Solutions Group (600,000 patients, September 2018), Oregon Department of Human Services (645,000 patients, March 2019), Elite Emergency Physicians (550,000 patients, June 2020), Magellan Health (365,000 patients, April 2020), and BJC Health System (286,876 patients, March 2020), Defendant knew or should have known that its electronic records would be targeted by cybercriminals.

54.     Indeed, cyberattacks against the healthcare industry have been common for over eleven years with the FBI warning as early as 2011 that cybercriminals were "advancing their abilities to attack a system remotely" and "[o]nce a system is compromised, cyber criminals will use their accesses to obtain PII." The FBI further warned that that "the increasing sophistication of

---

[11] *2022 Breach Barometer*, PROTENUS, https://blog.protenus.com/key-takeaways-from-the-2022-breach-barometer (last visited May. 7, 2023).

[12] Jill McKeon, *Health Sector Suffered 337 Healthcare Data Breaches in First Half of Year*, Cybersecurity News (July 19, 2022), available at: https://healthitsecurity.com/news/health-sector-suffered-337-healthcare-data-breaches-in-first-half-of-year (last visited May. 7, 2023).

PEARSON WARSHAW, LLP
15165 VENTURA BOULEVARD, SUITE 400
SHERMAN OAKS, CALIFORNIA 91403

cyber criminals will no doubt lead to an escalation in cybercrime."[13]

55.    PHI is particularly valuable and has been referred to as a "treasure trove for criminals."[14]  A cybercriminal who steals a person's PHI can end up with as many as "seven to 10 personal identifying characteristics of an individual."[15] A study by Experian found that the "average total cost" of medical identity theft is "about $20,000" per incident in 2010, and that a majority of victims of medical identity theft were forced to pay out-of-pocket costs for healthcare they did not receive in order to restore coverage.[16]

56.    Cyberattacks on medical systems, like Defendant's, have become so notorious that the FBI and U.S. Secret Service have issued a warning to potential targets, so they are aware of, and prepared for, a potential attack. As one report explained, "[e]ntities like smaller municipalities and hospitals are attractive . . . because they often have lesser IT defenses and a high incentive to regain access to their data quickly."[17]

57.    According to an article in the HIPAA Journal posted on October 14, 2022, cybercriminals hack into medical practices for their "highly prized" medical records. "[T]he number of data breaches reported by HIPAA-regulated entities continues to increase every year. 2021 saw 714 data breaches of 500 or more records reported to the [HHS' Office for Civil Rights] OCR – an 11% increase from the previous year. Almost three-quarters of those breaches were classified as

---

[13] Gordon M. Snow, *Statement before the House Financial Services Committee, Subcommittee on Financial Institutions and Consumer Credit*, FBI (Sept. 14, 2011), https://archives.fbi.gov/archives/news/testimony/cyber-security-threats-to-the-financial-sector.

[14] *See* Andrew Steger, *What Happens to Stolen Healthcare Data?*, HEALTHTECH MAGAZINE (Oct. 30, 2019), https://healthtechmagazine.net/article/2019/10/what-happens-stolen-healthcare-data-perfcon (quoting Tom Kellermann, Chief Cybersecurity Officer, Carbon Black, stating "Health information is a treasure trove for criminals.") (last visited May. 7, 2023).

[15] *Id.*

[16] Elinor Mills, *Study: Medical identity theft is costly for victims*, CNET (Mar. 3, 2010), https://www.cnet.com/news/privacy/study-medical-identity-theft-is-costly-for-victims/.

[17] *FBI, Secret Service Warn of Targeted*, Law360 (Nov. 18, 2019), https://www.law360.com/articles/1220974/fbi-secret-service-warn-of-targeted-ransomware.

hacking/IT incidents."[18]

58.    Healthcare organizations are easy targets because "even relatively small healthcare providers may store the records of hundreds of thousands of patients. The stored data is highly detailed, including demographic data, Social Security numbers, financial information, health insurance information, and medical and clinical data, and that information can be easily monetized."[19] In this case, Postmeds stored the records of *millions* of patients.

59.    Private Information, like that stolen from Postmeds, are "often processed and packaged with other illegally obtained data to create full record sets (fullz) that contain extensive information on individuals, often in intimate detail."[20] The record sets are then sold on dark web sites to other criminals and "allows an identity kit to be created, which can then be sold for considerable profit to identity thieves or other criminals to support an extensive range of criminal activities."[21]

60.    Indeed, cybercriminals are also monetizing encrypted data by saving it until decryption methods are developed, at which point the data will be combined with the rest of the "fullz." This practice is well-known among entities actively monitoring for such risks, as Defendant should reasonably have been doing.

61.    Given these facts, any company that transacts business with a consumer and then compromises the privacy of consumers' Private Information has thus deprived that consumer of the full monetary value of the consumer's transaction with the company.

62.    In fact, according to the cybersecurity firm Mimecast, 90% of healthcare organizations experienced cyberattacks in the past year.[22]

---

[18] The HIPAA Journal, *Editorial: Why Do Criminals Target Medical Records* (Oct. 14, 2022), https://www.hipaajournal.com/why-do-criminals-target-medical-records.

[19] See *Id.*

[20] *Id.*

[21] *See Id.*

[22] *See* Maria Henriquez, *Iowa City Hospital Suffers Phishing Attack, Security Magazine* (Nov. 23, 2020), https://www.securitymagazine.com/articles/93988-iowa-city-hospital-suffers-phishing-

PEARSON WARSHAW, LLP
15165 VENTURA BOULEVARD, SUITE 400
SHERMAN OAKS, CALIFORNIA 91403

PEARSON WARSHAW, LLP
15165 VENTURA BOULEVARD, SUITE 400
SHERMAN OAKS, CALIFORNIA 91403

63.     Postmeds was on notice that the FBI has recently been concerned about data security in the healthcare industry. In August 2014, after a cyberattack on Community Health Systems, Inc., the FBI warned companies within the healthcare industry that hackers were targeting them. The warning stated that "[t]he FBI has observed malicious actors targeting healthcare related systems, perhaps for the purpose of obtaining the Protected Healthcare Information (PHI) and/or Personally Identifiable Information (PII)."[23]

64.     The American Medical Association ("AMA") has also warned healthcare companies about the importance of protecting their patients' confidential information:

> Cybersecurity is not just a technical issue; it's a patient safety issue. AMA research has revealed that 83% of physicians work in a practice that has experienced some kind of cyberattack. Unfortunately, practices are learning that cyberattacks not only threaten the privacy and security of patients' health and financial information, but also patient access to care.[24]

65.     As implied by the above AMA quote, stolen Private Information can be used to interrupt important medical services. This is an imminent and certainly impending risk for Plaintiff and Class Members.

66.     The U.S. Department of Health and Human Services and the Office of Consumer Rights urges the use of encryption of data containing sensitive personal information. As far back as 2014, the Department fined two healthcare companies approximately two million dollars for failing to encrypt laptops containing sensitive personal information. In announcing the fines, Susan McAndrew, formerly OCR's deputy director of health information privacy, stated in 2014 that "[o]ur message to these organizations is simple: encryption is your best defense against these

---

attack.

[23] Jim Finkle, *FBI Warns Healthcare Firms that they are Targeted by Hackers*, REUTERS (Aug. 2014), https://www.reuters.com/article/us-cybersecurity-healthcare-fbi/fbi-warns-healthcare-firms-they-are-targeted-by-hackers-idINKBN0GK24U20140820 (last visited May 7, 2023).

[24] Andis Robeznieks, *Cybersecurity: Ransomware attacks shut down clinics, hospitals*, AM. MED.ASS'N (Oct 4, 2019), https://www.ama-assn.org/practice-management/sustainability/cybersecurity-ransomware-attacks-shut-down-clinics-hospitals.

1    incidents."[25]

2    67.    As a HIPAA covered entity, Postmeds should have known about its data security

3    vulnerabilities and implemented enhanced and adequate protection, particularly given the nature of

4    the Private Information stored in its unprotected files.

5    **Defendant Fails to Comply with FTC Guidelines**

6    68.    The Federal Trade Commission ("FTC") has promulgated numerous guides for

7    businesses which highlight the importance of implementing reasonable data security practices.

8    According to the FTC, the need for data security should factor into all business decision-making.

9    69.    In 2016, the FTC updated its publication, Protecting Personal Information: A Guide

10    for Business, which established cyber-security guidelines for businesses. The guidelines note that

11    businesses should protect the personal customer information that they keep; properly dispose of

12    personal information that is no longer needed; encrypt information stored on computer networks;

13    understand their network's vulnerabilities; and implement policies to correct any security

14    problems.[26] The guidelines also recommend that businesses use an intrusion detection system to

15    expose a breach as soon as it occurs; monitor all incoming traffic for activity indicating someone is

16    attempting to hack the system; watch for large amounts of data being transmitted from the system;

17    and, have a response plan ready in the event of a breach.[27]

18    70.    The FTC further recommends that companies not maintain PII longer than necessary

19    for authorization of a transaction; limit access to sensitive data; require complex passwords to be

20    used on networks; use industry-tested methods for security; monitor for suspicious activity on the

21    network; and verify that third-party service providers have implemented reasonable security

22    measures.

23

24    [25] Susan D. Hall, *OCR levies $2 million in HIPAA fines for stolen laptops*, Fierce Healthcare (Apr. 23, 2014), https://www.fiercehealthcare.com/it/ocr-levies-2-million-hipaa-fines-for-stolen-laptops.

25

26    [26] *Protecting Personal Information: A Guide for Business*, Federal Trade Commission (Oct. 2016), *available at* https://ww.ftc.gov/system/files/documents/plain-language/pdf-0136_protecting-personal-information.pdf.

27

28    [27] *Id.*

PEARSON WARSHAW, LLP
15165 VENTURA BOULEVARD, SUITE 400
SHERMAN OAKS, CALIFORNIA 91403

71.     The FTC has brought enforcement actions against businesses for failing to adequately and reasonably protect customer data, treating the failure to employ reasonable and appropriate measures to protect against unauthorized access to confidential consumer data as an unfair act or practice prohibited by Section 5 of the Federal Trade Commission Act ("FTC Act"), 15 U.S.C. § 45. Orders resulting from these actions further clarify the measures businesses must take to meet their data security obligations.

72.     These FTC enforcement actions include actions against healthcare providers and partners like Defendant. *See*, e.g., *In the Matter of LabMD, Inc*., 2016-2 Trade Cas. (CCH) ¶ 79708, 2016 WL 4128215, at *32 (MSNET July 28, 2016) ("[T]he Commission concludes that LabMD's data security practices were unreasonable and constitute an unfair act or practice in violation of Section 5 of the FTC Act.").

73.     Defendant failed to properly implement basic data security practices.

74.     Defendant's failure to employ reasonable and appropriate measures to protect against unauthorized access to patients' Private Information constitutes an unfair act or practice prohibited by Section 5 of the FTC Act, 15 U.S.C. § 45.

75.     Defendant was at all times fully aware of their obligation to protect the Private Information of customers and patients. Defendant was also aware of the significant repercussions that would result from its failure to do so.

## Defendant Fails to Comply with Industry Standards

76.     As shown above, experts studying cybersecurity routinely identify healthcare providers and partners as being particularly vulnerable to cyberattacks because of the value of the Private Information which they collect and maintain.

77.     Several best practices have been identified that at a minimum should be implemented by healthcare service providers, like Defendant, including but not limited to: educating all employees; strong passwords; multi-layer security, including firewalls, anti-virus, and anti-malware software; encryption, making data unreadable without a key; multi-factor authentication; backup data; and limitations on which employees can access sensitive data.

78.     Other best cybersecurity practices that are standard in the healthcare industry include

PEARSON WARSHAW, LLP
15165 VENTURA BOULEVARD, SUITE 400
SHERMAN OAKS, CALIFORNIA 91403

1    installing appropriate malware detection software; monitoring and limiting the network ports;

2    protecting web browsers and email management systems; setting up network systems such as

3    firewalls, switches and routers; monitoring and protection of physical security systems; protection

4    against any possible communication system; training staff regarding critical points.

5        79.    Defendant failed to meet the minimum standards of any of the following

6    frameworks: the NIST Cybersecurity Framework Version 1.1 (including without limitation PR.AC-

7    1, PR.AC-3, PR.AC-4, PR.AC-5, PR.AC-6, PR.AC-7, PR.AT-1, PR.DS-1, PR.DS-5, PR.PT-1,

8    PR.PT-3, DE.CM-1, DE.CM-4, DE.CM-7, DE.CM-8, and RS.CO-2), and the Center for Internet

9    Security's Critical Security Controls (CIS CSC), which are all established standards in reasonable

10   cybersecurity readiness.

11       80.    These foregoing frameworks are existing and applicable industry standards in the

12   healthcare industry, and Defendant failed to comply with these accepted standards, thereby opening

13   the door to the cyber incident and, ultimately, causing the Data Breach.

14   **Defendant's Conduct Violates HIPAA Obligation to Safeguard Private Information**

15       81.    As a pharmacy services provider, Postmeds is, and so acknowledges that it is, a

16   covered entity under HIPAA (45 C.F.R. § 160.103)[28] and is required to comply with the HIPAA

17   Privacy Rule and Security Rule, 45 C.F.R. Part 160 and Part 164, Subparts A and E ("Standards for

18   Privacy of Individually Identifiable Health Information"), and Security Rule ("Security Standards

19   for the Protection of Electronic Protected Health Information"), 45 C.F.R. Part 160 and Part 164,

20   Subparts A and C.

21       82.    HIPAA requires covered entities to protect against reasonably anticipated threats to

22   the security of sensitive patient health information.

23       83.    Postmeds is subject to the rules and regulations for safeguarding electronic forms of

24   medical information pursuant to the Health Information Technology Act ("HITECH"). See 42

25   U.S.C. §17921, 45 C.F.R. § 160.103.

26       84.    HIPAA's Privacy Rule or Standards for Privacy of Individually Identifiable Health

27

---

28   [28] Notice of HIPPA Privacy Policy, https://www.truepill.com/legal/nopp (last accessed Nov. 17, 2023).

PEARSON WARSHAW, LLP
15165 VENTURA BOULEVARD, SUITE 400
SHERMAN OAKS, CALIFORNIA 91403

Information establishes national standards for the protection of health information that is kept or transferred in electronic form.

85.    HIPAA covered entities must implement safeguards to ensure the confidentiality, integrity, and availability of PHI. Safeguards must include physical, technical, and administrative components.

86.    Title II of HIPAA contains what are known as the Administrative Simplification provisions. 42 U.S.C. §§ 1301, *et seq.* These provisions require, among other things, that the Department of Health and Human Services ("HHS") create rules to streamline the standards for handling PII like the data Defendant left unguarded. The HHS subsequently promulgated multiple regulations under authority of the Administrative Simplification provisions of HIPAA. These rules include 45 C.F.R. § 164.306(a)(1-4); 45 C.F.R. § 164.312(a)(1); 45 C.F.R. § 164.308(a)(1)(i); 45 C.F.R. § 164.308(a)(1)(ii)(D), and 45 C.F.R. § 164.530(b).

87.    A Data Breach such as the one Defendant experienced, is considered a breach under the HIPAA Rules because there is an access of PHI not permitted under the HIPAA Privacy Rule:

> A breach under the HIPAA Rules is defined as, "...the acquisition, access, use, or disclosure of PHI in a manner not permitted under the [HIPAA Privacy Rule] which compromises the security or privacy of the PHI." See 45 C.F.R. 164.40.

88.    The Data Breach resulted from a combination of insufficiencies that demonstrate Postmeds failed to comply with safeguards mandated by HIPAA regulations.

### Cyberattacks and Data Breaches Cause Disruption and Put Consumers at an Increased Risk of Fraud and Identity Theft

89.    Cyberattacks and data breaches at health care companies like Defendant's are especially problematic because they can negatively impact the overall daily lives of individuals affected by the attack.

90.    Researchers have found that among medical service providers that experience a data security incident, the death rate among patients increased in the months and years after the attack.[29]

---

[29] *See* Nsikan Akpan, *Ransomware and Data Breaches Linked to Uptick in Fatal Heart Attacks*, PBS (Oct. 24, 2019), https://www.pbs.org/newshour/science/ransomware-and-other-data-breaches-linked-to-uptick-in-fatal-heart-attacks.

PEARSON WARSHAW, LLP
15165 VENTURA BOULEVARD, SUITE 400
SHERMAN OAKS, CALIFORNIA 91403

91.     Researchers have further found that at medical service providers that experienced a data security incident, the incident was associated with a deterioration in timeliness and patient outcomes, generally.[30]

92.     The United States Government Accountability Office released a report in 2007 regarding data breaches ("GAO Report") in which it noted that victims of identity theft face "substantial costs and time to repair the damage to their good name and credit record."[31]

93.     That is because any victim of a data breach is exposed to serious ramifications regardless of the nature of the data. Indeed, the reason criminals steal Private Information is to monetize it. They do this by selling the spoils of their cyberattacks on the black market to identity thieves who desire to extort and harass victims, and to take over victims' identities in order to engage in illegal financial transactions under the victims' names. Because a person's identity is akin to a puzzle, the more accurate the pieces of data an identity thief obtains about a person, the easier it is for the thief to take on the victim's identity, or otherwise harass or track the victim. For example, armed with just a name and date of birth, a data thief can utilize a hacking technique referred to as "social engineering" to obtain even more information about a victim's identity, such as a person's login credentials or Social Security number. Social engineering is a form of hacking whereby a data thief uses previously acquired information to manipulate individuals into disclosing additional confidential or personal information through means such as spam phone calls and text messages or phishing emails.

94.     The FTC recommends that identity theft victims take several steps to protect their personal and financial information after a data breach, including contacting one of the credit bureaus to place a fraud alert (consider an extended fraud alert that lasts for seven years if someone steals their identity), reviewing their credit reports, contacting companies to remove fraudulent charges

---

[30] *See* Sung J. Choi et al., *Data Breach Remediation Efforts and Their Implications for Hospital Quality*, 54 Health Services Research 971, 971-980 (2019), *available at* https://onlinelibrary.wiley.com/doi/full/10.1111/1475-6773.13203.

[31] *See* U.S. Gov. Accounting Office, GAO-07-737, Personal Information: Data Breaches Are Frequent, but Evidence of Resulting Identity Theft Is Limited; However, the Full Extent Is Unknown (June 2007), *available at* https://www.gao.gov/new.items/d07737.pdf.

1    from their accounts, placing a credit freeze on their credit, and correcting their credit reports.[32]

2        95.    Moreover, theft of Private Information is also gravely serious because Private

3    Information is an extremely valuable property right.[33]

4        96.    Its value is axiomatic, considering the value of "big data" in corporate America and

5    the fact that the consequences of cyber thefts include heavy prison sentences. Even this obvious risk

6    to reward analysis illustrates beyond doubt that Private Information has considerable market value.

7        97.    It must also be noted there may be a substantial time lag—measured in years—

8    between when harm occurs and when it is discovered, and also between when Private Information

9    and/or financial information is stolen and when it is used.

10       98.    According to the U.S. Government Accountability Office, which conducted a study

11    regarding data breaches:

12       [L]aw enforcement officials told us that in some cases, stolen data may be held for
         up to a year or more before being used to commit identity theft. Further, once stolen
13       data have been sold or posted on the Web, fraudulent use of that information may
         continue for years. As a result, studies that attempt to measure the harm resulting
14       from data breaches cannot necessarily rule out all future harm.

15

16    *See* GAO Report, at p. 29.

17       99.    Private Information is such a valuable commodity to identity thieves that once the

18    information has been compromised, criminals often trade the information on the "cyber black-

19    market" for years.

20       100.    There is a strong probability that entire batches of stolen information have been

21    dumped on the black market and are yet to be dumped on the black market, meaning Plaintiff and

22    Class Members are at an increased risk of fraud and identity theft for many years into the future.

23

24    _____

      [32] *See IdentityTheft.gov*, Federal Trade Commission, https://www.identitytheft.gov/Steps (last

25    visited May 7, 2023).

26    [33] *See, e.g.,* John T. Soma, et al, *Corporate Privacy Trend: The "Value" of Personally Identifiable
      Information ("PII") Equals the "Value" of Financial Assets*, 15 Rich. J.L. & Tech. 11, at *3-4

27    (2009) ("PII, which companies obtain at little cost, has quantifiable value that is rapidly reaching a
      level comparable to the value of traditional financial assets.") (citations omitted).

28

PEARSON WARSHAW, LLP
15165 VENTURA BOULEVARD, SUITE 400
SHERMAN OAKS, CALIFORNIA 91403

PEARSON WARSHAW, LLP
15165 VENTURA BOULEVARD, SUITE 400
SHERMAN OAKS, CALIFORNIA 91403

101.    Thus, Plaintiff and Class Members must vigilantly monitor their financial and medical accounts, or the accounts of deceased individuals for whom Class Members are the executors or surviving spouses, for many years to come.

102.    Private Information can sell for as much as $363 per record according to the Infosec Institute.[34] Private Information is particularly valuable because criminals can use it to target victims with frauds and scams. Once Private Information is stolen, fraudulent use of that information and damage to victims may continue for years.

103.    This data, as one would expect, demands a much higher price on the black market. Martin Walter, senior director at cybersecurity firm RedSeal, explained, "[c]ompared to credit card information, personally identifiable information and Social Security Numbers are worth more than 10x on the black market."[35]

104.    Medical information is especially valuable to identity thieves.

105.    Theft of PHI, in particular, is gravely serious: "[a] thief may use your name or health insurance numbers to see a doctor, get prescription drugs, file claims with your insurance provider, or get other care. If the thief's health information is mixed with yours, your treatment, insurance and payment records, and credit report may be affected."[36]

106.    Drug manufacturers, medical device manufacturers, pharmacies, hospitals, and other healthcare service providers often purchase PHI on the black market for the purpose of target marketing their products and services to the physical maladies of the data breach victims themselves. Insurance companies purchase and use wrongfully disclosed PHI to adjust their insureds' medical insurance premiums.

107.    Because of the value of its collected and stored data, the medical industry has

---

[34] *See* Ashiq Ja, *Hackers Selling Healthcare Data in the Black Market*, InfoSec (July 27, 2015), https://resources.infosecinstitute.com/topic/hackers-selling-healthcare-data-in-the-black-market/.

[35] Tim Greene, *Anthem Hack: Personal Data Stolen Sells for 10x Price of Stolen Credit Card Numbers*, Computer World (Feb. 6, 2015), http://www.itworld.com/article/2880960/anthem-hack-personal-data-stolen-sells-for-10x-price-of-stolen-credit-card-numbers.html.

[36] *See* Federal Trade Commission, *Medical Identity Theft*, http://www.consumer.ftc.gov/articles/0171-medical-identity-theft (last visited Apr. 6, 2023).

1    experienced disproportionally higher numbers of data theft events than other industries.

2    108.    For this reason, Defendant knew or should have known about these dangers and

3    strengthened their data and email handling systems accordingly. Defendant was on notice of the

4    substantial and foreseeable risk of harm from a data breach, yet Defendant failed to properly prepare

5    for that risk.

6    109.    Defendant placed itself in a position where they owed a duty to Plaintiff and Class

7    Members by virtue of the sensitivity of the data that they collected. Indeed, because of Defendant,

8    Plaintiff and Class Members were placed in a worse position than they would have been had

9    Defendant not collected and maintained their data. Defendant knew the risk that it created and,

10   accordingly, was in the best position to protect Plaintiff and Class Members by virtue of the special

11   relationship that they created with them.

**DEFENDANT'S BREACH**

13   110.    Defendant breached its obligations to Plaintiff and Class Members and/or was

14   otherwise negligent and reckless because it failed to properly maintain and safeguard its computer

15   systems and data. Defendant's unlawful conduct includes, but is not limited to, the following acts

16   and/or omissions:

(a)    Failing to maintain an adequate data security system to reduce the risk of data
       breaches and cyber-attacks;

(b)    Failing to adequately protect patients' and customers' Private Information;

(c)    Failing to properly monitor its own data security systems for existing
       intrusions;

(d)    Failing to ensure that its vendors with access to their computer systems and
       data employed reasonable security procedures;

(e)    Failing to train its employees in the proper handling of emails containing
       Private Information and maintain adequate email security practices;

(f)    Failing to ensure the confidentiality and integrity of electronic PHI it created,
       received, maintained, and/or transmitted, in violation of 45 C.F.R. §

PEARSON WARSHAW, LLP
15165 VENTURA BOULEVARD, SUITE 400
SHERMAN OAKS, CALIFORNIA 91403

164.306(a)(1);

(g)     Failing to implement technical policies and procedures for electronic information systems that maintain electronic PHI to allow access only to those persons or software programs that have been granted access rights in violation of 45 C.F.R. § 164.312(a)(1);

(h)     Failing to implement policies and procedures to prevent, detect, contain, and correct security violations in violation of 45 C.F.R. § 164.308(a)(1)(i);

(i)     Failing to implement procedures to review records of information system activity regularly, such as audit logs, access reports, and security incident tracking reports in violation of 45 C.F.R. § 164.308(a)(1)(ii)(D);

(j)     Failing to protect against reasonably anticipated threats or hazards to the security or integrity of electronic PHI in violation of 45 C.F.R. § 164.306(a)(2);

(k)     Failing to protect against reasonably anticipated uses or disclosures of electronic PHI that are not permitted under the privacy rules regarding individually identifiable health information in violation of 45 C.F.R. § 164.306(a)(3);

(l)     Failing to ensure compliance with HIPAA security standard rules by its workforces in violation of 45 C.F.R. § 164.306(a)(4);

(m)     Failing to train all members of its workforces effectively on the policies and procedures regarding PHI as necessary and appropriate for the members of their workforces to carry out their functions and to maintain security of PHI, in violation of 45 C.F.R. § 164.530(b);

(n)     Failing to render the electronic Private Information it maintained unusable, unreadable, or indecipherable to unauthorized individuals, as it had not encrypted the electronic PHI as specified in the HIPAA Security Rule by "the use of an algorithmic process to transform data into a form in which there is a low probability of assigning meaning without use of a confidential process

PEARSON WARSHAW, LLP
15165 VENTURA BOULEVARD, SUITE 400
SHERMAN OAKS, CALIFORNIA 91403

or key" (45 CFR § 164.304's definition of "encryption");

(o)    Failing to comply with FTC guidelines for cybersecurity, in violation of Section 5 of the FTC Act;

(p)    Failing to adhere to industry standards for cybersecurity as discussed above; and

(q)    Otherwise breaching its duties and obligations to protect Plaintiff's and Class Members' Private Information.

111.    Defendant negligently and unlawfully failed to safeguard Plaintiff's and Class Members' Private Information by allowing cyberthieves to access Postmeds's computer network and systems for multiple days which contained unsecured and unencrypted Private Information.

112.    Accordingly, as outlined below, Plaintiff and Class Members now face an increased risk of fraud and identity theft. In addition, Plaintiff and the Class Members also lost the benefit of the bargain they made with Defendant.

**Plaintiff's and Class Members' Damages**

113.    Given the sensitivity of the Private Information involved in this Data Breach, Plaintiff and Class Members have all suffered damages and will face a substantial risk of additional injuries for years to come, if not the rest of their lives. Yet, to date, Defendant has not so much as offered to provide the majority of victims of the Data Breach with limited subscriptions to fraud and identity monitoring services. Defendant has done nothing to compensate Plaintiff or Class Members for many of the injuries they have already suffered. Defendant has not demonstrated any efforts to prevent additional harm from befalling Plaintiff and Class Members as a result of the Data Breach.

114.    Plaintiff and Class Members have been damaged by the compromise of their Private Information in the Data Breach.

115.    Plaintiff's and Class Members' names, prescription information, medication type, demographic information, and/or prescribing physician were all compromised in the Data Breach and are now in the hands of the cybercriminals who accessed Defendant's computer system(s). [37]

---

[37] *See* Postmeds Notice on U.S. Department of Health and Human Services' data breach reporting portal, https://ocrportal.hhs.gov/ocr/breach/breach_report.jsf (last accessed Nov. 17, 2023).

PEARSON WARSHAW, LLP
15165 VENTURA BOULEVARD, SUITE 400
SHERMAN OAKS, CALIFORNIA 91403

116.    Since being notified of the Data Breach, Plaintiff has spent time dealing with the impact of the Data Breach, valuable time Plaintiff otherwise would have spent on other activities, including but not limited to work and/or recreation.

117.    Due to the Data Breach, Plaintiff anticipates spending considerable time and money on an ongoing basis to try to mitigate and address harms caused by the Data Breach. This includes changing passwords, cancelling credit and debit cards, and monitoring her accounts for fraudulent activity.

118.    Plaintiff's and Class Members' Private Information was compromised as a direct and proximate result of the Data Breach.

119.    As a direct and proximate result of Defendant's conduct, Plaintiff's and Class Members have been placed at a present, imminent, immediate, and continuing increased risk of harm from fraud and identity theft.

120.    As a direct and proximate result of Defendant's conduct, Plaintiff and Class Members have been forced to spend time dealing with the effects of the Data Breach.

121.    Plaintiff and Class Members face substantial risk of out-of-pocket fraud losses such as loans opened in their names, medical services billed in their names, tax return fraud, utility bills opened in their names, credit card fraud, and similar identity theft.

122.    Plaintiff and Class Members face substantial risk of being targeted for future phishing, data intrusion, and other illegal schemes based on Plaintiff's and Class Members' Private Information as potential fraudsters could use that information to more effectively target such schemes to Plaintiff and Class Members.

123.    Plaintiff and Class Members may also incur out-of-pocket costs for protective measures such as credit monitoring fees, credit report fees, credit freeze fees, and similar costs directly or indirectly related to the Data Breach.

124.    Plaintiff and Class Members also suffered a loss of value of their Private Information when it was acquired by cyber thieves in the Data Breach. Numerous courts have recognized the propriety of loss of value damages in related cases.

125.    Plaintiff and Class Members were also damaged via benefit-of-the-bargain damages.

PEARSON WARSHAW, LLP
15165 VENTURA BOULEVARD, SUITE 400
SHERMAN OAKS, CALIFORNIA 91403

PEARSON WARSHAW, LLP
15165 VENTURA BOULEVARD, SUITE 400
SHERMAN OAKS, CALIFORNIA 91403

Plaintiff and Class Members overpaid for a service that was intended to be accompanied by adequate data security that complied with industry standards but was not. Part of the price Plaintiff and Class Members paid to Defendant and/or Defendant's healthcare partners was intended to be used by Defendant to fund adequate security of their computer system(s) and Plaintiff's and Class Members' Private Information. Thus, Plaintiff and Class Members did not get what they paid for and agreed to.

126.   Plaintiff and Class Members have spent and will continue to spend significant amounts of time monitoring their accounts and sensitive information for misuse.

127.   Plaintiff and Class Members have suffered or will suffer actual injury as a direct result of the Data Breach. Many victims suffered ascertainable losses in the form of out-of-pocket expenses and the value of their time reasonably incurred to remedy or mitigate the effects of the Data Breach relating to:

      (a)    Reviewing and monitoring sensitive accounts and finding fraudulent insurance claims, loans, and/or government benefits claims;

      (b)    Purchasing credit monitoring and identity theft prevention;

      (c)    Placing "freezes" and "alerts" with reporting agencies;

      (d)    Spending time on the phone with or at financial institutions, healthcare providers, and/or government agencies to dispute unauthorized and fraudulent activity in their name;

      (e)    Contacting financial institutions and closing or modifying financial accounts; and

      (f)    Closely reviewing and monitoring Social Security Number, medical insurance accounts, bank accounts, and credit reports for unauthorized activity for years to come.

128.   Moreover, Plaintiff and Class Members have an interest in ensuring that their Private Information, which is believed to remain in the possession of Defendant, is protected from further breaches by the implementation of security measures and safeguards, including but not limited to, making sure that the storage of data or documents containing Private Information is not accessible

1  online and that access to such data is password protected.

2      129.    Further, as a result of Defendant's conduct, Plaintiff and Class Members are forced

3  to live with the anxiety that their Private Information—which contains the most intimate details

4  about a person's life, including what ailments they suffer, whether physical or mental—may be

5  disclosed to the entire world, thereby subjecting them to embarrassment and depriving them of any

6  right to privacy whatsoever.

7      130.    As a direct and proximate result of Defendant's actions and inactions, Plaintiff and

8  Class Members have suffered anxiety, emotional distress, loss of time, loss of privacy, and are at an

9  increased risk of future harm.

10                              **Plaintiff's Experience**

11     131.    Plaintiff provided her Private Information to her Postmeds either directly or in

12  connection with her obtaining pharmacy services from Defendant. Plaintiff trusted that this

13  information would be safeguarded according to state and federal law.

14     132.    Defendant received and maintains the information Plaintiff was required to provide

15  to her doctors or medical professionals in connection obtaining pharmacy services from Defendant.

16     133.    Plaintiff is very careful with her Private Information. She stores any documents

17  containing her Private Information in a safe and secure location or destroys the documents. Plaintiff

18  has never knowingly transmitted unencrypted sensitive Private Information over the internet or any

19  other unsecured source. Moreover, Plaintiff diligently chooses unique usernames and passwords for

20  her various online accounts.

21     134.    As a result of the Data Breach, Plaintiff made reasonable efforts to mitigate the

22  impact of the Data Breach after receiving the data breach notification letter, including but not

23  limited to researching the Data Breach, reviewing credit card and financial account statements, and

24  monitoring her credit.

25     135.    Plaintiff was forced to spend multiple hours attempting to mitigate the effects of the

26  Data Breach. She will continue to spend valuable time she otherwise would have spent on other

27  activities, including but not limited to work and/or recreation. This is time that is lost forever and

28  cannot be recaptured.

PEARSON WARSHAW, LLP
15165 VENTURA BOULEVARD, SUITE 400
SHERMAN OAKS, CALIFORNIA 91403

136.    Plaintiff suffered actual injury and damages from having her Private Information compromised as a result of the Data Breach including, but not limited to (a) damage to and diminution in the value of her Private Information, a form of intangible property that Postmeds obtained from Plaintiff and/or Plaintiff's doctors and medical professionals; (b) violation of her privacy rights; (c) the theft of her Private Information; (d) loss of time; (e) imminent and impending injury arising from the increased risk of identity theft and fraud; (f) failure to receive the benefit of her bargain; and (g) nominal and statutory damages.

137.    Plaintiff has also suffered emotional distress that is proportional to the risk of harm and loss of privacy caused by the theft of her Private Information, which she believed would be protected from unauthorized access and disclosure, including anxiety about unauthorized parties viewing, selling, and/or using her Private Information for purposes of identity theft and fraud. Plaintiff has also suffered anxiety about unauthorized parties viewing, using, and/or publishing information related to her private health conditions and medication prescriptions.

138.    As a result of the Data Breach, Plaintiff anticipates spending considerable time and money on an ongoing basis to try to mitigate and address harms caused by the Data Breach. In addition, Plaintiff will continue to be at present, imminent, and continued increased risk of identity theft and fraud in perpetuity.

139.    Plaintiff has a continuing interest in ensuring that her Private Information, which remains backed up in Defendant's possession, is protected and safeguarded from future breaches.

## CLASS ACTION ALLEGATIONS

140.    Plaintiff brings this action against Postmeds individually and on behalf of all other persons similarly situated.

141.    Plaintiff proposes the following Class definition, subject to amendment as appropriate:

> **All persons or, if minors, their parents or guardians, or, if deceased, their executors or surviving spouses, who Postmeds identified as being among those individuals impacted by the Data Breach, including all who were sent a notice of the Data Breach (the "Class").**

142.    Excluded from the Class is Defendant's officers, directors, and employees; any

PEARSON WARSHAW, LLP
15165 VENTURA BOULEVARD, SUITE 400
SHERMAN OAKS, CALIFORNIA 91403

1  entity in which Defendant has a controlling interest; and the affiliates, legal representatives,

2  attorneys, successors, heirs, and assigns of Defendant. Excluded also from the Class are members

3  of the judiciary to whom this case is assigned, their families and Members of their staff.

4      143.    Plaintiff reserves the right to amend or modify the Class definitions or create

5  additional subclasses as this case progresses.

6      144.    Numerosity. The Members of the Class are so numerous that joinder of all of them

7  is impracticable. Defendant disclosed to the SEC that the Private Information of approximately 2.3

8  million Class Members was compromised in Data Breach.

9      145.    Commonality. There are questions of law and fact common to the Classes, which

10 predominate over any questions affecting only individual Class Members. These common

11 questions of law and fact include, without limitation:

12          (a)    Whether Defendant unlawfully used, maintained, lost, or disclosed

13                 Plaintiff's and Class Members' Private Information;

14          (b)    Whether Defendant failed to implement and maintain reasonable security

15                 procedures and practices appropriate to the nature and scope of the

16                 information compromised in the Data Breach;

17          (c)    Whether Defendant's data security systems prior to and during the Data

18                 Breach complied with applicable data security laws and regulations

19                 including, e.g., HIPAA;

20          (d)    Whether Defendant's data security systems prior to and during the Data

21                 Breach were consistent with industry standards;

22          (e)    Whether Defendant owed a duty to Class Members to safeguard their

23                 Private Information;

24          (f)    Whether Defendant breached their duty to Class Members to safeguard their

25                 Private Information;

26          (g)    Whether Defendant knew or should have known that its data security

27                 systems and monitoring processes were deficient;

28          (h)    Whether Defendant should have discovered the Data Breach sooner;

PEARSON WARSHAW, LLP
15165 VENTURA BOULEVARD, SUITE 400
SHERMAN OAKS, CALIFORNIA 91403

(i) Whether Plaintiff and Class Members suffered legally cognizable damages as a result of Defendant's misconduct;

(j) Whether Defendant's conduct was negligent;

(k) Whether Defendant breached implied contracts with Plaintiff and Class Members;

(l) Whether Defendant as unjustly enriched by unlawfully retaining a benefit conferred upon them by Plaintiff and Class Members;

(m) Whether Defendant failed to provide notice of the Data Breach in a timely manner; and;

(n) Whether Plaintiff and Class Members are entitled to damages, civil penalties, punitive damages, treble damages, and/or injunctive relief.

146.    <u>Typicality</u>. Named Plaintiff's claims are typical of those of other Class Members because the named Plaintiff's information, like that of every other Class Member, was compromised in the Data Breach.

147.    <u>Adequacy of Representation</u>. Plaintiff will fairly and adequately represent and protect the interests of the Members of the Class. Plaintiff's Counsel are competent and experienced in litigating class actions.

148.    <u>Predominance</u>. Defendant has engaged in a common course of conduct toward Plaintiff and Class Members, in that all the data of Plaintiff and Class Members was stored on the same computer system and unlawfully accessed in the same way. The common issues arising from Defendant's conduct affecting Class Members set out above predominate over any individualized issues. Adjudication of these common issues in a single action has important and desirable advantages of judicial economy.

149.    <u>Superiority</u>. A class action is superior to other available methods for the fair and efficient adjudication of the controversy. Class treatment of common questions of law and fact is superior to multiple individual actions or piecemeal litigation. Absent a class action, most Class Members would likely find that the cost of litigating their individual claims is prohibitively high and would therefore have no effective remedy. The prosecution of separate actions by individual

PEARSON WARSHAW, LLP
15165 VENTURA BOULEVARD, SUITE 400
SHERMAN OAKS, CALIFORNIA 91403

PEARSON WARSHAW, LLP
15165 VENTURA BOULEVARD, SUITE 400
SHERMAN OAKS, CALIFORNIA 91403

Class Members would create a risk of inconsistent or varying adjudications with respect to individual Class Members, which would establish incompatible standards of conduct for Defendant. In contrast, to conduct this action as a class action presents far fewer management difficulties, conserves judicial resources and the parties' resources, and protects the rights of each Class Member.

150.   Defendant has acted on grounds that apply generally to the Classes as a whole, so that Class certification, injunctive relief, and corresponding declaratory relief are appropriate on a Class-wide basis.

151.   Likewise, particular issues under Rule 42(d)(l) are appropriate for certification because such claims present only particular, common issues, the resolution of which would advance the disposition of this matter and the parties' interests therein. Such particular issues include, but are not limited to:

(a)   Whether Defendant failed to timely notify the public of the Data Breach;

(b)   Whether Defendant owed a legal duty to Plaintiff and the Classes to exercise due care in collecting, storing, and safeguarding their Private Information;

(c)   Whether Defendant's security measures to protect their data systems were reasonable in light of best practices recommended by data security experts;

(d)   Whether Defendant's failure to institute adequate protective security measures amounted to negligence;

(e)   Whether Defendant failed to take commercially reasonable steps to safeguard consumer Private Information; and

(f)   Whether adherence to FTC data security recommendations, and measures recommended by data security experts would have reasonably prevented the Data Breach.

152.   Finally, all members of the proposed Classes are readily ascertainable. Defendant has access to Class Members' names and addresses affected by the Data Breach. Class Members have already been preliminarily identified and sent notice of the Data Breach by Defendant.

## CLAIMS FOR RELIEF

### COUNT I
**Negligence**
*(On Behalf of Plaintiff and the Nationwide Class)*

153.    Plaintiff re-alleges and incorporates by reference paragraphs 1 - 152 as if fully set forth herein.

154.    By collecting and storing the Private Information of Plaintiff and Class Members, in its computer system and network, and sharing it and using it for commercial gain, Defendant owed a duty of care to use reasonable means to secure and safeguard its computer system—and Class Members' Private Information held within it—to prevent disclosure of the information, and to safeguard the information from theft. Defendant's duty included a responsibility to implement processes by which it could detect a breach of its security systems in a reasonably expeditious period of time and to give prompt notice to those affected in the case of a data breach.

155.    Defendant owed a duty of care to Plaintiff and Class Members to provide data security consistent with industry standards and other requirements discussed herein, and to ensure that its systems and networks, and the personnel responsible for them, adequately protected the Private Information.

156.    Plaintiff and Class Members are a well-defined, foreseeable, and probable group of patients that Defendant was aware, or should have been aware, could be injured by inadequate data security measures.

157.    Defendant's duty of care to use reasonable security measures arose as a result of the special relationship that existed between Defendant and consumers, which is recognized by laws and regulations including but not limited to HIPAA, the FTC Act, and common law. Defendant was in a superior position to ensure that their systems were sufficient to protect against the foreseeable risk of harm to Class Members from a data breach.

158.    Defendant's duty to use reasonable security measures under HIPAA required Defendant to "reasonably protect" confidential data from "any intentional or unintentional use or disclosure" and to "have in place appropriate administrative, technical, and physical safeguards to

PEARSON WARSHAW, LLP
15165 VENTURA BOULEVARD, SUITE 400
SHERMAN OAKS, CALIFORNIA 91403

protect the privacy of protected health information." 45 C.F.R. § 164.530(c)(1). Some or all of the medical information at issue in this case constitutes "protected health information" within the meaning of HIPAA.

159.    In addition, Defendant had a duty to employ reasonable security measures under Section 5 of the Federal Trade Commission Act, 15 U.S.C. § 45, which prohibits "unfair . . . practices in or affecting commerce," including, as interpreted and enforced by the FTC, the unfair practice of failing to use reasonable measures to protect confidential data.

160.    Defendant's duty to use reasonable care in protecting confidential data arose not only as a result of the statutes and regulations described above, but also because Defendant is bound by industry standards to protect confidential Private Information.

161.    Defendant breached it duties, and thus was negligent, by failing to use reasonable measures to protect Class Members' Private Information. The specific negligent acts and omissions committed by Defendant includes, but are not limited to, the following:

(a)    Failing to adopt, implement, and maintain adequate security measures to safeguard Class Members' Private Information;

(b)    Failing to adequately monitor the security of its networks and systems;

(c)    Failing to ensure that its email system had plans in place to maintain reasonable data security safeguards;

(d)    Failing to have in place mitigation policies and procedures;

(e)    Allowing unauthorized access to Class Members' Private Information;

(f)    Failing to detect in a timely manner that Class Members' Private Information had been compromised; and

(g)    Failing to timely notify Class Members about the Data Breach so that they could take appropriate steps to mitigate the potential for identity theft and other damages.

162.    Plaintiff and Class Members have no ability to protect their Private Information that was or remains in Defendant's possession.

163.    It was foreseeable that Defendant's failure to use reasonable measures to protect

PEARSON WARSHAW, LLP
15165 VENTURA BOULEVARD, SUITE 400
SHERMAN OAKS,, CALIFORNIA 91403

1  Class Members' Private Information would result in injury to Class Members. Furthermore, the

2  breach of security was reasonably foreseeable given the known high frequency of cyberattacks and

3  data breaches in the healthcare industry.

4        164.    It was therefore foreseeable that the failure to adequately safeguard Class Members'

5  Private Information would result in one or more types of injuries to Class Members. In addition, the

6  breach of security was reasonably foreseeable given the known high frequency of cyberattacks and

7  data breaches in the healthcare industry.

8        165.    Defendant's conduct was grossly negligent and departed from reasonable standards

9  of care, including but not limited to, failing to adequately protect the Private Information and failing

10  to provide Plaintiff and Class Members with timely notice that their sensitive Private Information

11  had been compromised.

12        166.    Neither Plaintiff nor Class Members contributed to the Data Breach and subsequent

13  misuse of their Private Information as described in this Complaint.

14        167.    Plaintiff and Class Members are also entitled to injunctive relief requiring Defendant

15  to, *e.g.,* (i) strengthen its data security systems and monitoring procedures; (ii) submit to future

16  annual audits of those systems and monitoring procedures; and (iii) continue to provide adequate

17  credit monitoring to all Class Members.

18        168.    The injury and harm Plaintiff and Class Members suffered was the reasonably

19  foreseeable result of Defendant's breach of their duties. Defendant knew or should have known that

20  it was failing to meet its duties, and that Defendant's breach would cause Plaintiff and Class

21  Members to experience the foreseeable harms associated with the exposure of their Private

22  Information.

23        169.    As a direct and proximate result of Defendant's negligent conduct, Plaintiff and Class

24  Members have suffered injury and are entitled to nominal, compensatory, consequential, and all

25  other damages which the Court deems appropriate in an amount to be proven at trial.

26  / / /

27  / / /

28  / / /

PEARSON WARSHAW, LLP
15165 VENTURA BOULEVARD, SUITE 400
SHERMAN OAKS, CALIFORNIA 91403

**COUNT II**
**Negligence *Per Se***
***(On Behalf of Plaintiff and the Nationwide Class)***

170.    Plaintiff re-alleges and incorporates by reference paragraphs 1 - 152 as if fully set forth herein.

171.    In addition to the common law and special relationship duties alleged herein, Defendant also owed a duty to safeguard Plaintiff's and Class Members' Private Information by statute.

172.    Defendant's duty of care to use reasonable security measures arose as a result of the special relationship that existed between Defendant and consumers, which is recognized by laws and regulations including but not limited to HIPAA, the FTC Act, and common law. Defendant was in a superior position to ensure that their systems were sufficient to protect against the foreseeable risk of harm to Class Members from a data breach.

173.    Defendant's duty to use reasonable security measures under HIPAA required Defendant to "reasonably protect" confidential data from "any intentional or unintentional use or disclosure" and to "have in place appropriate administrative, technical, and physical safeguards to protect the privacy of protected health information." 45 C.F.R. § 164.530(c)(1). Some or all of the medical information at issue in this case constitutes "protected health information" within the meaning of HIPAA.

174.    In addition, Defendant had a duty to employ reasonable security measures under Section 5 of the Federal Trade Commission Act, 15 U.S.C. § 45, which prohibits "unfair . . . practices in or affecting commerce," including, as interpreted and enforced by the FTC, the unfair practice of failing to use reasonable measures to protect confidential data.

175.    Defendant's duty to use reasonable care in protecting confidential data arose not only as a result of the statutes and regulations described above, but also because Defendant is bound by industry standards to protect confidential Private Information.

176.    Defendant breached that duty, which, as discussed herein, caused Plaintiff and Class Members injuries, for which they are entitled to damages.

PEARSON WARSHAW, LLP
15165 VENTURA BOULEVARD, SUITE 400
SHERMAN OAKS, CALIFORNIA 91403

177.    As a direct and proximate result of Defendant's negligent conduct, Plaintiff and Class Members have suffered injuries and are entitled to nominal, compensatory, consequential, and all other damages which the Court deems appropriate in an amount to be proven at trial.

**COUNT III**
**Gross Negligence**
*(On Behalf of Plaintiff and the Nationwide Class)*

178.    Plaintiff re-alleges and incorporates by reference paragraphs 1 - 152 as if fully set forth herein.

179.    Defendant knew that it was protecting the most sensitive Private Information about Plaintiff and Class Members that exists—healthcare information—which can impact anything from housing, employment, benefits, education, and other areas of an individual's life.

180.    When that Private Information is compromised, the effects can be devastating to individuals, such that Defendant knew or should have known about these effects and the need to keep this information secure and protected.

181.    Defendant's failure to keep this information safe was grossly negligent, as Defendant was aware of the grave consequences of not keeping this information secure.

182.    As a result of Defendant's gross negligence, Plaintiff and Class Members have suffered injury and are entitled to nominal, compensatory, consequential, and all other damages which the Court deems appropriate in an amount to be proven at trial.

**COUNT IV**
**Breach of Implied Contract**
*(On Behalf of Plaintiff and the Nationwide Class)*

183.    Plaintiff re-alleges and incorporates by reference paragraphs 1 - 152 as if fully set forth herein.

184.    Defendant acquired and maintained the Private Information of Plaintiff and the Class that it received either directly or from its healthcare provider customers.

185.    When Plaintiff and Class Members paid money and provided their Private Information to their doctors and/or healthcare providers, either directly or indirectly, in exchange for goods or services, they entered into implied contracts with their doctors and/or healthcare

PEARSON WARSHAW, LLP
15165 VENTURA BOULEVARD, SUITE 400
SHERMAN OAKS, CALIFORNIA 91403

**CLASS ACTION COMPLAINT**

1   professionals, their business associates, and pharmacy platforms, including Defendant.

2      186.   Plaintiff and Class Members entered into implied contracts with Defendant under

3   which Defendant agreed to safeguard and protect such information and to timely and accurately

4   notify Plaintiff and Class Members that their information had been breached and compromised.

5      187.   Plaintiff and the Class were required to deliver their Private Information to Defendant

6   as part of the process of obtaining services provided by Defendant. Plaintiff and Class Members

7   paid money, or money was paid on their behalf, to Defendant in exchange for services.

8      188.   Postmeds solicited, offered, and invited Class Members to provide their Private

9   Information as part of Defendant's regular business practices. Plaintiff and Class Members accepted

10  Defendant's offers and provided their Private Information to Defendant, or, alternatively, provided

11  Plaintiff's and Class Members' information to doctors or other healthcare professionals, who then

12  provided to Defendant.

13     189.   Defendant accepted possession of Plaintiff's and Class Members' Private

14  Information for the purpose of providing services or Plaintiff and Class Members.

15     190.   In accepting such information and payment for services, Defendant entered into an

16  implied contract with Plaintiff and the other Class Members whereby Defendant became obligated

17  to reasonably safeguard Plaintiff's and the other Class Members' Private Information.

18     191.   Alternatively, Plaintiff and Class Members were the intended beneficiaries of data

19  protection agreements entered into between Defendant and healthcare providers.

20     192.   In delivering their Private Information to Defendant and paying for healthcare and

21  pharmacy services, Plaintiff and Class Members intended and understood that Defendant's would

22  adequately safeguard the data as part of those services.

23     193.   The implied promise of confidentiality includes consideration beyond those pre-

24  existing general duties owed under HIPAA or other state of federal regulations. The additional

25  consideration included implied promises to take adequate steps to comply with specific industry

26  data security standards and FTC guidelines on data security.

27     194.   The implied promises include but are not limited to: (1) taking steps to ensure that

28  any agents who are granted access to Private Information also protect the confidentiality of that data;

PEARSON WARSHAW, LLP
15165 VENTURA BOULEVARD, SUITE 400
SHERMAN OAKS, CALIFORNIA 91403

PEARSON WARSHAW, LLP
15165 VENTURA BOULEVARD, SUITE 400
SHERMAN OAKS, CALIFORNIA 91403

(2) taking steps to ensure that the information that is placed in the control of their agents is restricted and limited to achieve an authorized medical purpose; (3) restricting access to qualified and trained agents; (4) designing and implementing appropriate retention policies to protect the information against criminal data breaches; (5) applying or requiring proper encryption; (6) multifactor authentication for access; and (7) other steps to protect against foreseeable data breaches.

195.    Plaintiff and the Class Members would not have entrusted their Private Information to Defendant in the absence of such an implied contract.

196.    Had Defendant disclosed to Plaintiff and the Class (or their physicians) that it did not have adequate computer systems and security practices to secure sensitive data, Plaintiff and the other Class Members would not have provided their Private Information to Defendant (or their physicians or pharmacies to provide to Defendant).

197.    Defendant recognized that Plaintiff's and Class Members' Private Information is highly sensitive and must be protected, and that this protection was of material importance as part of the bargain to Plaintiff and the other Class Members.

198.    Plaintiff and the other Class Members fully performed their obligations under the implied contracts with Defendant.

199.    Defendant breached the implied contract with Plaintiff and the other Class Members by failing to take reasonable measures to safeguard their Private Information as described herein.

200.    As a direct and proximate result of Defendant's conduct, Plaintiff and the other Class Members suffered and will continue to suffer damages in an amount to be proven at trial.

**COUNT V**
**Unjust Enrichment**
**(*On Behalf of Plaintiff and the Nationwide Class*)**

201.    Plaintiff re-alleges and incorporates by reference paragraphs 1–152 as if fully set forth herein.

202.    This count is pleaded in the alternative to breach of contract.

203.    Defendant funds its data security measures entirely from its general revenue, including from money it makes based upon protecting Plaintiff's and Class Members' Private

PEARSON WARSHAW, LLP
15165 VENTURA BOULEVARD, SUITE 400
SHERMAN OAKS, CALIFORNIA 91403

Information.

204.    There is a direct nexus between money paid to Defendant and the requirement that Defendant keep Plaintiff's and Class Members' Private Information confidential and protected.

205.    Plaintiff and Class Members paid Defendant and/or healthcare providers a certain sum of money, which was used to fund data security via contracts with Defendant.

206.    As such, a portion of the payments made by or on behalf of Plaintiff and the Class Members is to be used to provide a reasonable level of data security, and the amount of the portion of each payment made that is allocated to data security is known to Defendant.

207.    Protecting data from Plaintiff and the rest of the Class Members is integral to Defendant's business. Without their data, Defendant would be unable to provide the pharmacy services comprising Defendant's core business.

208.    Plaintiff's and Class Members' data has monetary value, and Defendant realizes this benefit when it chooses to store such data.

209.    Plaintiff and Class Members directly and indirectly conferred a monetary benefit on Defendant. They indirectly conferred a monetary benefit on Defendant by purchasing goods and/or services from entities that contracted with Defendant, and from which Defendant received compensation to protect certain data. Plaintiff and Class Members directly conferred a monetary benefit on Defendant by supplying Private Information, which has value, from which value Defendant derives its business value, and which should have been protected with adequate data security.

210.    Defendant knew that Plaintiff and Class Members conferred a benefit which Defendant accepted. Defendant profited from these transactions and used the Private Information of Plaintiff and Class Members for business purposes.

211.    Defendant enriched itself by saving the costs it reasonably should have expended on data security measures to secure Plaintiff's and Class Members' Private Information. Instead of providing a reasonable level of security that would have prevented the Data Breach, Defendant instead calculated to avoid its data security obligations at the expense of Plaintiff and Class Members by utilizing cheaper, ineffective security measures. Plaintiff and Class Members, on the other hand,

1    suffered as a direct and proximate result of Defendant's failure to provide the requisite security.

2        212.    Under the principles of equity and good conscience, Defendant should not be

3    permitted to retain the money belonging to Plaintiff and Class Members, because Defendant failed

4    to implement appropriate data management and security measures that are mandated by industry

5    standards.

6        213.    Defendant acquired the monetary benefit and Private Information through

7    inequitable means in that it failed to disclose the inadequate security practices previously alleged.

8        214.    If Plaintiff and Class Members knew that Defendant had not secured their Private

9    Information, they would not have agreed to provide their Private Information to Defendant (or to

10    their physician or pharmacy to provide to Defendant).

11        215.    Plaintiff and Class Members have no adequate remedy at law.

12        216.    As a direct and proximate result of Defendant's conduct, Plaintiff and Class

13    Members have suffered and will suffer injury, including but not limited to: (i) actual identity theft;

14    (ii) the loss of the opportunity how their Private Information is used; (iii) the compromise,

15    publication, and/or theft of their Private Information; (iv) out-of-pocket expenses associated with

16    the prevention, detection, and recovery from identity theft, and/or unauthorized use of their Private

17    Information; (v) lost opportunity costs associated with effort expended and the loss of productivity

18    addressing and attempting to mitigate the actual and future consequences of the Data Breach,

19    including but not limited to efforts spent researching how to prevent, detect, contest, and recover

20    from identity theft; (vi) the continued risk to their Private Information, which remain in Defendant's

21    possession and is subject to further unauthorized disclosures so long as Defendant fails to undertake

22    appropriate and adequate measures to protect Private Information in their continued possession; (vii)

23    loss or privacy from the authorized access and exfiltration of their Private Information; and (viii)

24    future costs in terms of time, effort, and money that will be expended to prevent, detect, contest, and

25    repair the impact of the Private Information compromised as a result of the Data Breach for the

26    remainder of the lives of Plaintiff and Class Members.

27        217.    As a direct and proximate result of Defendant's conduct, Plaintiff and Class

28    Members have suffered and will continue to suffer other forms of injury and/or harm.

PEARSON WARSHAW, LLP
15165 VENTURA BOULEVARD, SUITE 400
SHERMAN OAKS, CALIFORNIA 91403

1    218.    Defendant should be compelled to disgorge into a common fund or constructive trust,

2    for the benefit of Plaintiff and Class Members, proceeds that they unjustly received from them. In

3    the alternative, Defendant should be compelled to refund the amounts that Plaintiff and Class

4    Members overpaid for Defendant's services.

5                                          **COUNT VI**
                                          **Bailment**
6                         **(On Behalf of Plaintiff and the Nationwide Class)**

7

8    219.    Plaintiff re-alleges and incorporates by reference paragraphs 1 - 152 as if set fully

9    forth herein.

10   220.    Plaintiff and Class Members provided Private Information to Defendant—either

11   directly or through healthcare providers and their business associates—which Defendant was under

12   a duty to keep private and confidential.

13   221.    Plaintiff's and Class Members' Private Information is personal property, and it was

14   conveyed to Defendant for the certain purpose of keeping the information private and confidential.

15   222.    Plaintiff's and Class Members' Private Information has value, and is highly prized

16   by hackers and criminals. Defendant was aware of the risks it took when accepting the Private

17   Information for safeguarding, and assumed the risk voluntarily.

18   223.    Once Defendant accepted Plaintiff's and Class Members' Private Information, it was

19   in the exclusive possession of that information, and neither Plaintiff nor Class Members could

20   control that information once it was within the possession, custody, and control of Defendant.

21   224.    Defendant did not safeguard Plaintiff's or Class Members' Private Information when

22   it failed to adopt and enforce adequate security safeguards to prevent a known risk of a cyberattack.

23   225.    Defendant's failure to safeguard Plaintiff's and Class Members' Private Information

24   resulted in that information being accessed or obtained by third-party cybercriminals.

25   226.    As a result of Defendant's failure to keep Plaintiff's and Class Members' Private

26   Information secure, Plaintiff and Class Members suffered injury, for which compensation—

27   including nominal damages and compensatory damages—is appropriate.

28

PEARSON WARSHAW, LLP
15165 VENTURA BOULEVARD, SUITE 400
SHERMAN OAKS, CALIFORNIA 91403

PEARSON WARSHAW, LLP
15165 VENTURA BOULEVARD, SUITE 400
SHERMAN OAKS, CALIFORNIA 91403

**COUNT VII**
**Breach of Fiduciary Duty**
*(On Behalf of Plaintiff and the Nationwide Class)*

227.    Plaintiff re-alleges and incorporates by reference paragraphs 1 - 152 as if fully set forth herein.

228.    In light of the special relationship between Defendant and Plaintiff and Class Members, Defendant became a fiduciary by undertaking a guardianship of the Private Information to act primarily for Plaintiff and Class Members, (1) for the safeguarding of Plaintiff's and Class Members' Private Information; (2) to timely notify Plaintiff and Class Members of a Data Breach and disclosure; and (3) to maintain complete and accurate records of what information (and where) Defendant does store.

229.    Defendant had a fiduciary duty to act for the benefit of Plaintiff and Class Members upon matters within the scope of its relationship with its patients, in particular, to keep secure their Private Information.

230.    Defendant breached its fiduciary duty to Plaintiff and Class Members by failing to encrypt and otherwise protect the integrity of the systems containing Plaintiff's and Class Members' Private Information.

231.    Defendant breached its fiduciary duty to Plaintiff and Class Members by otherwise failing to safeguard Plaintiff's and Class Members' Private Information.

232.    As a direct and proximate result of Defendant's breach of its fiduciary duty, Plaintiff and Class Members have suffered and will suffer injury, including but not limited to: (i) actual identity theft; (ii) the compromise, publication, and/or theft of their Private Information; (iii) out-of-pocket expenses associated with the prevention, detection, and recovery from identity theft and/or unauthorized use of their Private Information; (iv) lost opportunity costs associated with effort expended and the loss of productivity addressing and attempting to mitigate the actual and future consequences of the Data Breach, including but not limited to efforts spent researching how to prevent, detect, contest, and recover from identity theft; (v) the continued risk to their Private Information, which remains in Defendant's possession and is subject to further unauthorized

1    disclosures so long as Defendant fails to undertake appropriate and adequate measures to protect the

2    Private Information in their continued possession; (vi) future costs in terms of time, effort, and

3    money that will be expended as result of the Data Breach for the remainder of the lives of Plaintiff

4    and Class Members; and (vii) the diminished value of Defendant's services they received.

5        233.    As a direct and proximate result of Defendant's breach of their fiduciary duty,

6    Plaintiff and Class Members have suffered and will continue to suffer other forms of injury and/or

7    harm, and other economic and non-economic losses.

8                                **PRAYER FOR RELIEF**

9        WHEREFORE, Plaintiff prays for judgment as follows:

10       (a)    For an Order certifying this action as a Class action and appointing Plaintiff

11              as Class Representatives and her counsel as Class Counsel;

12       (b)    For equitable relief enjoining Defendant from engaging in the wrongful

13              conduct complained of herein pertaining to the misuse and/or disclosure of

14              Plaintiff's and Class Members' Private Information, and from refusing to

15              issue prompt, complete and accurate disclosures to Plaintiff and Class

16              Members;

17       (c)    For equitable relief compelling Defendant to utilize appropriate methods and

18              policies with respect to consumer data collection, storage, and safety, and to

19              disclose with specificity the type of Private Information compromised during

20              the Data Breach;

21       (d)    For equitable relief requiring restitution and disgorgement of the revenues

22              wrongfully retained as a result of Defendant's wrongful conduct;

23       (e)    Ordering Defendant to pay for not less than fifteen years of credit monitoring

24              services for Plaintiff and the Class;

25       (f)    For an award of actual damages, compensatory damages, statutory damages,

26              nominal damages, and/or statutory penalties, in an amount to be determined,

27              as allowable by law;

28       (g)    For an award of punitive damages, as allowable by law;

PEARSON WARSHAW, LLP
15165 VENTURA BOULEVARD, SUITE 400
SHERMAN OAKS, CALIFORNIA 91403

(h)    For an award of attorneys' fees and costs, and any other expense, including expert witness fees, as permitted by law;

(i)    Pre- and post-judgment interest on any amounts awarded; and,

(j)    Such other and further relief as this court may deem just and proper.

### JURY TRIAL DEMANDED

Under Federal Rule of Civil Procedure 38(b), Plaintiff demands a trial by jury of any and all issues in this action so triable as of right.

DATED:  November 21, 2023            Respectfully Submitted,

By:        */s/ Daniel L. Warshaw*
                DANIEL L. WARSHAW

DANIEL L. WARSHAW (Bar No. 185365)
  dwarshaw@pwfirm.com
**PEARSON WARSHAW, LLP**
15165 Ventura Boulevard, Suite 400
Sherman Oaks, California 91403
Telephone: (818) 788-8300
Facsimile:  (818) 788-8104

JILL M. MANNING (Bar No. 178849)
  jmanning@pwfirm.com
NEIL J. SWARTZBERG (Bar No. 215133)
  nswartzberg@pwfirm.com
**PEARSON WARSHAW, LLP**
555 Montgomery Street, Suite 1205
San Francisco, California 94111
Telephone: (415) 433-9000
Facsimile:  (415) 433-9008

JEFFREY A. KONCIUS (Bar No. 189803)
  koncius@kiesel.law
NICOLE RAMIREZ JONES (Bar No. 279017)
  ramirezjones@kiesel.law
**KIESEL LAW LLP**
86648 Wilshire Boulevard
Beverly Hills, CA 90211

PEARSON WARSHAW, LLP
15165 VENTURA BOULEVARD, SUITE 400
SHERMAN OAKS, CALIFORNIA 91403

Telephone: (310) 228-6929
Facsimile: (310) 854-0812

JAMES J. PIZZIRUSSO*
    jpizzirusso@hausfeld.com
**HAUSFELD LLP**
888 16th Street, NW, Suite 300
Washington, D.C. 20006
Telephone: (202) 542-7200
Facsimile:  (202) 542-7201

STEVEN M. NATHAN (Bar No. 153250)
    snathan@hausfeld.com
**HAUSFELD LLP**
33 Whitehall Street, 14th Floor
New York, NY 10004
Telephone: (646) 357-1100
Facsimile:  (212) 202-4322

*Counsel for Plaintiff and the Proposed Class*

*\*Pro Hac Vice Forthcoming*

PEARSON WARSHAW, LLP
15165 VENTURA BOULEVARD, SUITE 400
SHERMAN OAKS, CALIFORNIA 91403

# EXHIBIT A



Postmeds, Inc.
Secure Processing Center
P.O. Box 3826
Suwanee, GA 30024



205 1 125078 ****************AUTO**ALL FOR AADC 390
Linde Johnson

October 30, 2023

Dear Linda Johnson,

Postmeds, Inc. is a pharmacy company that fulfills prescription orders. At Postmeds, we are committed to providing outstanding pharmacy services and protecting the information in our care. We recently identified and addressed a cybersecurity incident involving some of that information and wanted to share with you what happened and the steps we are taking in response.

**What Happened:** On August 31, 2023, we discovered that a bad actor gained access to a subset of files used for pharmacy management and fulfillment services. We immediately launched an investigation with assistance from cybersecurity professionals and worked quickly to secure our environment.

**What Information was Involved:** Our investigation determined that the bad actor accessed the files between August 30, 2023 to September 1, 2023. One or more of those files contained your name and prescription information. The information varied by individual, but may have included medication type, demographic information, and/or prescribing physician. Importantly, your Social Security number was **not** involved, as Postmeds does not receive this information.

**What We Are Doing and What You Can Do in Response:** We want you to know that we are taking this incident very seriously and regret any inconvenience or concern this may cause you. We are enhancing our security protocols and technical safeguards in response to this incident, and we are increasing awareness of cybersecurity threats through additional employee training. We also encourage you to regularly review your information for accuracy, as a best practice, including information you receive from your healthcare providers.

**For more information:** If you have additional questions about this incident, please call our dedicated, confidential call center at 1-855-457-9143, Monday through Friday, 9:00 a.m. to 9:00 p.m. Eastern Time.

Sincerely,

Postmeds, Inc.